**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

CARLOS ALLEN PETITIONER

v. CIVIL ACTION NO. 3:25-cv-00328

BURL CAIN, Commissioner,

Mississippi Department of Corrections RESPONDENT

# SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS

# PURSUANT TO 28 U.S.C. § 2254

## I. INTRODUCTION

Petitioner Carlos Allen respectfully submits this Second Amended Petition for Writ of Habeas Corpus pursuant to *28 U.S.C. §2254*, challenging the constitutionality of his Madison County, Mississippi conviction and sentence. Petitioner is currently in the custody of the Mississippi Department of Corrections under a judgment imposing an aggregate one-hundred-year sentence.

This Petition raises claims arising from structural conflict of interest, ineffective assistance of counsel, improper judicial participation, unconstitutional sentencing enhancements, juror bias, and due process violations grounded in the trial and sentencing record. Petitioner asserts that his conviction and sentence were obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution and clearly established federal law as determined by the United States Supreme Court.

Petitioner files this Second Amended Petition to clarify and organize claims previously presented, incorporate precise record citations, and present constitutional issues in a form consistent with federal habeas review.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to *28 U.S.C. §§2241* and *2254* because Petitioner is in custody pursuant to a judgment of a Mississippi state court and alleges that his custody violates the Constitution and laws of the United States.

Venue is proper in the Southern District of Mississippi under *28 U.S.C. §2241(d)* because the judgment under attack was entered in Madison County, Mississippi, which lies within this judicial district, and because the records and witnesses relevant to this Petition are located within this district.

**III. PARTIES**

Petitioner Carlos Allen is a state prisoner currently confined under the authority of the Mississippi Department of Corrections.

Respondent Burl Cain is the Commissioner of the Mississippi Department of Corrections and is the proper respondent pursuant to ***Rule 2 of the Rules Governing Section 2254*** Cases.

**IV. PROCEDURAL HISTORY**

Petitioner was charged by indictment in the Circuit Court of Madison County, Mississippi, with multiple controlled-substance offenses under Miss. Code Ann. §*41-29-139*, along with enhancement allegations including subsequent offender status, firearm enhancement, and habitual offender provisions.

Following a jury trial, Petitioner was found guilty on Counts I through IV. The trial court thereafter conducted sentencing proceedings and imposed consecutive sentences totaling one hundred (100) years in the custody of the Mississippi Department of Corrections, to be served day-for-day without parole eligibility.

Petitioner pursued direct appeal through appointed counsel. Petitioner asserts that appellate counsel abandoned meritorious constitutional claims and failed to meaningfully present issues preserved in the trial record, resulting in procedural complications affecting exhaustion.

Petitioner thereafter sought post-conviction relief in state court raising constitutional claims grounded in ineffective assistance of counsel, judicial misconduct, and sentencing illegality. Relief was denied, and Petitioner timely filed the present federal habeas action pursuant to 28 *U.S.C. §2254.*

On February 18, 2026, the Court entered an Order directing Respondent to file an answer or responsive pleading and directing service of the Petition and Amended Petition upon the Mississippi Attorney General (Order, Doc. 37). Petitioner now submits this Second Amended Petition to present all claims in a single operative pleading supported by the record.

**V. STANDARD OF REVIEW UNDER 28 U.S.C. §2254**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas relief may be granted where a state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or where the decision was based on an unreasonable determination of the facts in light of the evidence presented. See *28 U.S.C. §2254(d).*

Structural constitutional violations, including denial of conflict-free counsel, judicial bias, and sentencing based on non-jury factual findings, warrant relief where the state proceedings failed to provide the fundamental fairness guaranteed by the Constitution.

**GROUND ONE: Structural Sixth Amendment Violation — Trial Court Failed to Conduct Required Inquiry After Notice of Counsel's Material Conflict, Resulting in Denial of Conflict-Free Representation (Young; Holloway; Wood)**

**Record Facts Establishing Formal Notice of a Material Conflict**

**Prior to trial, defense counsel Gerald Mumford filed a written motion advising the court that a "material conflict" existed requiring withdrawal. The filing placed the tribunal on explicit constitutional notice that Petitioner's right to conflict-free counsel was at risk.**

**Record Exhibits**

Public records reflect that during the pendency of Petitioner's case, counsel served as a Hinds County prosecuting attorney, a governmental role involving representation of the State's interests in criminal matters. ***(Exhibit K — Hinds County Prosecutor Profile).***

Additionally, the Mississippi Prosecutors Association roster for 2022–2023 lists counsel among prosecutorial members alongside district attorneys and government advocates operating within the same regional prosecutorial structure. (***Exhibit O-Q — Mississippi Prosecutors Association Roster 2022–2023***).

These exhibits demonstrate that counsel did not function solely as a private defense advocate but maintained institutional ties to prosecutorial authorities at the same time he was defending Petitioner. Under ***Young v. United States ex rel. Vuitton et Fils, 481 U.S. 787 (1987)***, an attorney aligned with prosecutorial interests cannot simultaneously represent a criminal defendant without undermining the adversarial structure guaranteed by the Sixth Amendment.

- Motion to Withdraw / Material Conflict (***Trial Trans. Clerk Record p. 88).***
- Pretrial Hearing Transcript (***Trial Tr. Motion Hearing 1/31/2022 at p. 34).***

The court acknowledged the existence of the motion on the record.

The motion was presented days before trial was scheduled to begin, yet no evidentiary inquiry occurred. The court neither questioned counsel regarding the scope of the conflict nor advised Petitioner of the risks associated with continued representation.

Instead, the court curtailed further record development, stating:

"You don't make records ..." (***Trial TScript1 Motion Hearing 1/31/2022 at p. 34***).

Trial proceeded immediately thereafter.

**Clearly Established Federal Law Imposed a Duty to Inquire**

The Supreme Court has repeatedly held that once a trial court is alerted to a potential conflict of interest, the Constitution requires an inquiry sufficient to ensure the defendant receives conflict-

free representation. ***Holloway v. Arkansas, 435 U.S. 475 (1978)*** — Failure to investigate a known conflict violates the Sixth Amendment and constitutes structural error. ***Wood v. Georgia, 450 U.S. 261 (1981)*** — Courts must conduct an inquiry whenever they know or reasonably should know of a potential conflict. ***Young v. United States ex rel. Vuitton, 481 U.S. 787 (1987)*** — Structural defects arise where the integrity and disinterestedness of representation are compromised.

Here, the written motion alleging a "material conflict" triggered the court's constitutional duty. The obligation arose not from speculation but from formal notice appearing in the record itself.

**Mississippi Professional Rules Reinforced the Court's Constitutional Duty**

***Mississippi Rule of Professional Conduct 1.7*** prohibits representation where a lawyer's responsibilities or institutional obligations materially limit advocacy.

Once counsel asserted that such a limitation existed, the court was required to ensure:

- That the conflict was explored on the record,
- That Petitioner understood the risk, and
- That any waiver was knowing and voluntary.

No such steps were taken.

The absence of inquiry allowed trial to proceed despite an unresolved ethical conflict — precisely the danger addressed in ***Holloway*** and ***Wood.***

**Structural Prejudice — No Strickland Showing Required**

This ground does not depend on a traditional ineffective-assistance prejudice analysis. Under ***Holloway*** and ***Young***, the failure to investigate a known conflict is a structural violation because it undermines the integrity of the adversarial process itself.

Nevertheless, the record demonstrates that the unresolved conflict manifested throughout the proceedings, including:

- Limited litigation of warrant integrity issues,
- Passive handling of exculpatory text-message evidence,
- Ineffective development of jury instructions,
- Failure to challenge judicial rulings that shaped the narrative presented to jurors.

These downstream effects confirm that the conflict was not theoretical; it affected the manner in which the defense was conducted.

**Neutral Tribunal Failure — Constitutional Framing**

Petitioner does not assert that the trial court acted with personal bias. Rather, the constitutional violation arises from the court's failure to perform its duty as a neutral tribunal once formal notice was given.

The duty to inquire exists to preserve judicial neutrality and public confidence in the fairness of proceedings. By allowing trial to proceed without questioning counsel or developing a record, the court failed to enforce the structural safeguard required by clearly established federal law.

**AEDPA — The State Court's Decision Was Contrary to Clearly Established Law**

Under *28 U.S.C. §2254(d)(1)*, relief is warranted where a state court decision is contrary to or an unreasonable application of Supreme Court precedent.

The undisputed sequence is:

**Counsel filed a motion alleging a material conflict.**

**The court acknowledged the motion.**

- **No inquiry occurred.**
- **Trial commenced.**

No reasonable application of ***Holloway*, *Wood*, or *Young*** permits a court to ignore formal notice of a conflict and proceed to trial without investigation.

**Relief Requested**

Because Petitioner was tried while represented by counsel laboring under a material conflict and because the court failed to conduct the constitutionally required inquiry, the conviction was obtained in violation of the Sixth and Fourteenth Amendments.

**Petitioner respectfully requests that this Court:**

- Vacate the conviction and sentence, or
- Grant an evidentiary hearing to determine the full scope and impact of the structural conflict.

**GROUND TWO: Trial Court Failed to Conduct the Required Inquiry After Being Placed on Notice of a Material Conflict and Breakdown in Representation, Resulting in Structural Sixth Amendment Error and Due Process Violations**

**Statement of the Constitutional Claim**

The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to conflict-free counsel and a fundamentally fair adversarial process. When a trial court is placed on notice that defense counsel may be operating under a material conflict or breakdown in representation, the

court has an independent constitutional duty to conduct an adequate inquiry. ***Holloway v. Arkansas, 435 U.S. 475 (1978); Cuyler v. Sullivan, 446 U.S. 335 (1980).*** The record demonstrates that the trial court was repeatedly alerted to such concerns — including through a written motion filed days before trial — yet failed to conduct any meaningful inquiry before compelling Petitioner to proceed.

**Formal Notice of a Material Conflict on the Eve of Trial**

On January 28, 2022 — the Friday before trial was scheduled to begin — defense counsel filed a written Motion to Withdraw Counsel, stating that:

"A material conflict has arisen between client and attorney." (***Trial Transcript-Clerk's Papers p.88***).

The timing of this filing heightened the trial court's constitutional obligation to investigate. A last-minute assertion of a material conflict immediately before jury selection signals potential impairment of counsel's readiness and loyalty at a critical stage of proceedings. Rather than pause and inquire, the court proceeded without exploring the nature of the conflict or Petitioner's understanding of the risks.

**The Trial Court's Failure to Discharge its Mandatory Duty to Inquire**

During the January 31, 2022 motion hearing, counsel simply withdrew the motion, and the court moved forward without questioning counsel or Petitioner:

"I hereby withdraw that motion to withdraw as counsel." ***(1/31/2022 Trial Transcript – Motion Hearing, p.34).***

Counsel's summary withdrawal of the motion—occurring under the immediate pressure of an impending trial and the court's denial of a continuance—did not relieve the tribunal of its independent constitutional duty. Under **Wood v. Georgia, 450 U.S. 261 (1981),** the duty to inquire is triggered whenever a court 'knows or reasonably should know' a conflict exists. Once formal notice of a 'material conflict' was placed on the record, the court was required to investigate the nature of that conflict and ensure that any waiver by the Petitioner was knowing, voluntary, and intelligent. The court's failure to ask a single question of the Petitioner or counsel violated this mandate

The court conducted no inquiry into whether representation remained conflict-free, whether Petitioner consented knowingly, or whether counsel could proceed effectively despite the prior assertion of a material conflict.

**Mississippi Rules of Professional Conduct Confirm Why Inquiry Was Required**

The Mississippi Rules of Professional Conduct provide objective standards demonstrating why the court's duty to inquire was triggered:

- **Rule 1.7** — Conflict of Interest: prohibits representation where a conflict materially limits the lawyer's responsibilities unless informed consent is obtained.
- **Rule 1.4** — Communication: requires meaningful consultation with the client about significant decisions.
- **Rule 1.1** and **Rule 1.3** — Competence and Diligence: require adequate preparation and zealous advocacy

A written motion alleging a "material conflict" on the eve of trial signaled potential violations of these professional obligations. While ethical rules do not themselves create federal constitutional claims, they inform the objective reasonableness standard under ***Strickland v. Washington, 466 U.S. 668 (1984)***, and confirm that the trial court should have ensured that representation satisfied Sixth Amendment requirements before allowing the case to proceed.

**Counsel Attempted to Preserve Concerns, but the Court Restricted Development of the Record**

Immediately after denying a motion to continue trial, counsel attempted to preserve issues:

"Your Honor, may I make my record?" (***1/31/2022 Trial Transcript – Motion Hearing, p.34***).

The court responded:

"You don't make records in response to the Court's ruling." **(Id.).**

This exchange demonstrates that counsel sought to place additional concerns on the record — potentially relating to preparation, conflict, or trial readiness — but the court curtailed further development.

Later in the same hearing, counsel again attempted to make a record regarding jury qualification:

"I would like to make a record…" (***1/31/2022 Trial Transcript – Motion Hearing, p.37***).

Rather than conducting a broader inquiry into whether representation was impaired, the court rejected the request and proceeded with trial.

**Structural Sixth Amendment Error**

When a trial court knows of a potential conflict yet fails to conduct the required inquiry, the resulting error is structural because the defendant is forced to trial without assurance of conflict-free counsel. ***Holloway, 435 U.S. at 488***. The combination of:

- A written motion alleging a material conflict filed days before trial,
- Repeated attempts by counsel to preserve issues, and
- The court's refusal to inquire or develop the record,

Demonstrates that Petitioner's right to conflict-free representation was compromised at the very moment trial began. Because the trial court never conducted the constitutionally required inquiry, no factual determination resolving the conflict issue exists. A state decision that proceeds to trial while ignoring explicit notice of a material conflict is contrary to, or an unreasonable application of, clearly established Supreme Court precedent. AEDPA deference therefore does not bar relief.

The trial court was placed on unmistakable notice of a material conflict on the eve of trial. Instead of ensuring that Petitioner received conflict-free representation, the court curtailed the record and forced the case to proceed. This failure violated Petitioner's Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process, warranting federal habeas relief.

GROUND THREE: **Trial Counsel Rendered Ineffective Assistance and the Trial Court Violated Due Process by Allowing a One-Sided Narrative While Exculpatory Text Messages Undermining the State's Timeline Were Not Meaningfully Presented to the Jury**

The State's theory relied heavily on cellular communications extracted from Austin Elliott's device to establish timeline, intent, and context. The warrant materials and trial testimony demonstrate that law enforcement built the investigative narrative around messages obtained from Elliott's phone. (***Exhibit G — Elliott Device Warrant Affidavit at 1-3***). However, although inculpatory messages were introduced and emphasized, exculpatory communications occurring after Elliott's reported death and after Petitioner's arrest were not meaningfully presented or developed by defense counsel.

Trial transcripts and extraction records show that messages continued to be transmitted from Elliott's device hours after the sworn affidavit stated Elliott was pronounced deceased. (***Exhibits L-N — Cellebrite Extraction clear copy original petition; Sentencing Tr. at 451 referencing text communications***)(***Exhibit D,E, and G Search Warrant, Affidavit For Warrant, Return***). These communications directly undermined the State's emotional overdose narrative and supported the defense theory that the investigative timeline was incomplete or misleading. Yet counsel failed to emphasize these contradictions, failed to argue their exculpatory significance, and failed to counter the State's selective use of the same device evidence.

The Due Process Clause guarantees a meaningful opportunity to present a complete defense. **Chambers v. Mississippi,** ***410 U.S. 284 (1973);*** **Holmes v. South Carolina,** ***547 U.S. 319 (2006).*** When the State presents a curated narrative built on digital evidence while exculpatory portions of the same evidence remain undeveloped, the adversarial process is distorted and the verdict becomes unreliable. See **Estelle v. McGuire,** ***502 U.S. 62 (1991).***

Counsel's performance fell below constitutional standards under **Strickland v. Washington,** ***466 U.S. 668 (1984).*** A competent defense attorney would have:

1. Highlighted the post-death communications to challenge the State's timeline;
2. Argued that ongoing messages contradicted the emotional inference linking Petitioner to Elliott's death; and

3. Used the extraction evidence to support the entrapment theory and undermine investigative credibility.

Under ***§2254(d)(1),*** relief is warranted where a state court unreasonably applies clearly established federal law.

AEDPA deference fails here for three reasons:

1. Supreme Court Law Clearly Requires Litigation of Investigative Defects

   ***Kimmelman*** recognizes that failure to pursue obvious suppression issues is constitutionally deficient.

The warrant timeline and CI contradictions were evident from the record and exhibits available to counsel. (***Exhibits L-N — Cellebrite Extraction clear copy original petition; Sentencing Tr. at 451 referencing text communications***)(***Exhibit D,E, and G Search Warrant, Affidavit For Warrant, Return***).

2. The State Court's Decision Allowed a Distorted Narrative to Reach the Jury

Under ***Chambers***, due process is violated when evidentiary rulings or counsel failures prevent jurors from hearing evidence central to the defense theory.

The state court's acceptance of the unchallenged timeline was therefore an unreasonable application of clearly established law.

3. The Error Was Not Harmless

The prosecution's case hinged on credibility, chronology, and intent.

Evidence suggesting:

- Continued phone activity,
- Investigative pressure on the CI,
- Inconsistencies in the warrant narrative

Would have fundamentally altered how jurors evaluated guilt.

Further, the State's reliance on a narrative that was physically and digitally impossible—as evidenced by post-mortem activity in the **Cellebrite Extraction Reports**—constitutes a violation of the Due Process Clause under ***Napue v. Illinois*, *360 U.S. 264 (1959)***. The Supreme Court has long held that a conviction obtained through the use of false evidence, or by allowing false evidence to go uncorrected, is fundamentally unfair. *Id.* at 269. Here, the State possessed the forensic timestamps showing outgoing messages sent *after* the victim was pronounced deceased and *after* Petitioner was in custody (**Exhibits L–N**). By presenting a 'curated' timeline

to the jury that directly contradicted its own forensic evidence, the State permitted a false impression of the facts to remain uncorrected, rendering the resulting verdict inherently unreliable under ***Giglio v. United States*, *405 U.S. 150 (1972)*.**"

Because the omitted evidence struck at the core of the State's theory, the error had a substantial and injurious effect on the verdict.

The prejudice is substantial. The jury heard a narrative suggesting proximity to a fatal overdose but was not presented with the full context showing continued communications inconsistent with that narrative. Because the State relied on these communications to shape both guilt and sentencing considerations, there is a reasonable probability that the outcome would have been different had counsel fully utilized the exculpatory messages.

Relief Requested

Because the exclusion and ineffective use of exculpatory communications deprived Petitioner of a meaningful opportunity to present a complete defense and rendered the verdict unreliable, Petitioner respectfully requests that this Court grant habeas relief under ***28 U.S.C. §2254*** by:

Vacating the conviction and sentence;

Ordering a new trial at which the defense may fully present the exculpatory communications and timeline evidence; or

Granting such further relief as justice requires, including an evidentiary hearing if necessary to resolve disputed factual issues concerning the extraction and presentation of the messages

**GROUND FOUR: The State Relied on a Constitutionally Defective Cellular Device Warrant Containing Material Omissions and Overbreadth, and Trial Counsel Rendered Ineffective Assistance by Failing to Litigate a Franks Challenge or Seek Suppression (Fourth, Sixth, and Fourteenth Amendments)**

**Statement of the Constitutional Claim**

Petitioner was denied rights secured by the Fourth, Sixth, and Fourteenth Amendments when the State obtained and relied upon data extracted from Austin Elliott's cellular device pursuant to a warrant affidavit that contained material omissions and misleading characterizations. The affidavit executed by Investigator Lee Sanders portrayed Elliott and cooperating individuals as voluntary participants and described investigative events in a manner that obscured the degree of police direction and leverage applied during the investigation. (***Exhibit G — Elliott Device Warrant Affidavit at 1-3; Clerk Papers at 14-16 Exhibit D- Warrant Return; Exhibit E Search Warrant***). Trial testimony later revealed discrepancies concerning the custodial status of

cooperating witnesses and the investigative pressure applied — facts that were not disclosed to the issuing magistrate. (***Trial Tr. Vol. I, at 130-147) (p. 3***).

**Legal Standard for Material Omissions Under *Franks v. Delaware***

Under ***Franks v. Delaware, 438 U.S. 154 (1978)***, a warrant violates the Fourth Amendment where material omissions or misleading statements undermine probable cause. The affidavit's narrative omitted circumstances bearing directly on reliability and voluntariness, preventing a neutral and detached probable-cause determination. See also ***Illinois v. Gates, 462 U.S. 213 (1983)*** (requiring evaluation of probable cause under the totality of the circumstances).

**Fourth Amendment Particularity and Digital Privacy Concerns**

The warrant further authorized recovery of undefined data from Elliott's device for an "ongoing investigation," lacking meaningful temporal or categorical limitations. In light of the Supreme Court's recognition that digital devices contain vast private information, such breadth raises serious particularity concerns. ***Riley v. California, 573 U.S. 373 (2014); Groh v. Ramirez, 540 U.S. 551 (2004)***. The State later relied on communications extracted from this device to construct the investigative timeline and to reinforce an emotionally charged overdose narrative before the jury. (***Sentencing Tr. at 438-441, 451***).

**Ineffective Assistance of Counsel Under *Strickland***

Trial counsel rendered ineffective assistance by failing to request a ***Franks*** hearing, failing to challenge the affidavit's omissions, and failing to seek suppression of evidence derived from the device. Competent counsel would have investigated the discrepancies between the sworn affidavit and trial testimony, particularly the portrayal of cooperation as voluntary and the omission of investigative pressure. Counsel's failure allowed the State to present evidence whose constitutional validity was never meaningfully tested, satisfying both prongs of **Strickland v. Washington, 466 U.S. 668 (1984)**.

**Showing of Prejudice and Impact on Trial Outcome**

The prejudice resulting from this failure is substantial. Communications extracted from Elliott's phone were used to support the State's theory of intent, timeline, and investigative legitimacy. Had the affidavit been corrected to include omitted facts, or had the warrant been challenged for

overbreadth, there is a reasonable probability that suppression would have materially altered the evidentiary landscape presented to the jury.

**Federal Habeas Standard of Review (28 U.S.C. § 2254)**

The state court's adjudication of this issue was contrary to, and involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See *28 U.S.C. § 2254(d)(1).*

**Requested Relief**

Petitioner respectfully requests that this Court grant habeas relief by vacating the conviction and sentence, suppressing the evidence derived from the constitutionally defective device warrant, and ordering a new trial free from the taint of unlawfully obtained digital evidence, or alternatively granting an evidentiary hearing to determine the full scope of the affidavit omissions and resulting prejudice.

## GROUND FIVE: Ineffective Assistance of Counsel — Failure to Enforce the Motion in Limine Allowed an Emotionally Charged Overdose-and-Death Narrative to Dominate the Trial, Rendering the Proceeding Fundamentally Unfair

### Constitutional Framework: The Right to a Fair Trial and Conflict-Free Advocacy

The Fourteenth Amendment guarantees a trial free from evidence that renders the proceeding fundamentally unfair. Defense counsel bears a constitutional duty to prevent highly prejudicial narratives from distorting the jury's deliberative process.

- *Strickland v. Washington, 466 U.S. 668 (1984)* — Counsel must act as a reasonably competent advocate and guard against unfair prejudice.
- *Estelle v. McGuire, 502 U.S. 62 (1991)* — Admission of inflammatory evidence violates due process when it infects the trial with such unfairness as to make the resulting conviction a denial of due process.
- *Chambers v. Mississippi, 410 U.S. 284 (1973)* — Due process is violated where the exclusion or distortion of context prevents a fair and balanced presentation of the case.

The Fifth Circuit has repeatedly condemned situations in which judicial rulings allow emotionally charged narratives to shape juror perception. *United States v. Candelaria-Gonzalez, 547 F.2d 291, 297 (5th Cir. 1977); United States v. Bermea, 30 F.3d 1539, 1569–70 (5th Cir. 1994).*

**Record Evidence: The Trial Court's Recognition of "Extreme Prejudice"**

At the pretrial motion hearing held on January 24, 2022, the court expressly acknowledged that certain details surrounding Austin Elliott's overdose and death would be: **"too prejudicial."** (***Trial Trans at p. 25, line 29***).

The court issued a narrowly tailored *Motion in Limine* ruling, limiting the State's use of Elliott's circumstances to a singular, technical explanation: **"The only reason the Court has allowed the death of Mr. Elliott is because it explains why you don't have a necessary witness and how you got to the identity of this Defendant."** (***Trial Trans. p. 26, lines 1–4***).
Crucially, the Court placed a strict "Prejudice Gate" on the timeline of death to prevent the jury from inferring that Petitioner's alleged drug sale caused the fatality: **"Not he died the same day or he died within hours. None of that. That is too prejudicial."** (***Trial Trans at p. 25, lines 27–29***).

**Deficient Performance: Counsel Failed to Guard the "Prejudice Gate"**

Despite the Court's explicit warning that an immediate-death narrative would be "too prejudicial," the State was permitted to present a sprawling narrative of overdose, emergency response, and death. Once the Court recognized this risk, competent counsel was constitutionally obligated to:

1. **Object** the moment the testimony expanded beyond the "necessary witness" limitation;
2. **Enforce** the Court's specific ruling that the death not be portrayed as occurring "within hours" (***Trial Trans at p. 25***);
3. **Request Limiting Instructions** to ensure the jury did not associate Petitioner with an uncharged death.

Instead, counsel offered only generalized objections. (***Trial Trans at pp. 23–25***). Counsel failed to seek a curative instruction or move for a mistrial when the State used the death to **"tell the complete story"** (***Trial Trans 1 at p. 22, line 17***)—a strategy the Defense previously admitted would cause the jury to **"assume that (Elliott) died as a result of my client's actions."** (***Trial Trans at p. 24, lines 26–27***). There is no "reasonable trial strategy" in allowing a jury to be infected by a narrative the trial judge had already formally labeled "too prejudicial."

**Prejudice: The Emotional Narrative Altered the Trial's Fundamental Character**

The prosecution's case relied heavily on juror perception of intent and moral culpability. By allowing the "overdose-and-death" narrative to go unchallenged and uncorrected by limiting

instructions, counsel allowed the trial atmosphere to shift from a neutral adjudication of drug charges to a proceeding colored by moral outrage over a tragedy.

The jury heard a story framed around death while lacking the context that Elliott had been released from the hospital and died at a later time from unrelated circumstances. (***Trial Trans at p. 24, lines 18–21***). ***Under Estelle, 502 U.S. at 67–68***, this inflammatory evidence overwhelmed the jurors' ability to evaluate the specific drug charges rationally.

**Unreasonable Application of Fact**

Under *28 U.S.C. § 2254(d)*, relief is warranted because the state court's adjudication involved an **unreasonable determination of the facts** in light of the evidence presented in the state court record. The record (***Trial Trans*** proves the trial judge made a specific finding of "extreme prejudice," yet the state court later failed to find counsel ineffective for abandoning that very protection. Because the error allowed uncharged "Other Acts" evidence to dominate the trial, the state court's decision was contrary to ***Strickland*** and ***Estelle***.

**Relief Requested**

Petitioner respectfully requests that this Court vacate the conviction and sentence, as the failure to enforce the *Motion in Limine* rendered the trial fundamentally unfair, or in the alternative, grant an evidentiary hearing to determine the extent of the prejudice caused by the inflammatory death narrative.

**GROUND SIX: Trial Court Allowed Deliberations to Proceed Under Known Juror Confusion While Counsel Failed to Intervene, Violating Due Process and the Sixth Amendment**

**The Constitutional Duty to Dispel Juror Confusion**

Petitioner asserts that his rights under the Sixth and Fourteenth Amendments were violated when the trial court permitted the jury to continue deliberations despite clear confusion about the central defense of entrapment and the elements of the offenses charged. Defense counsel's subsequent failure to object or request corrective instructions compounded this error. The record clearly demonstrates that jurors expressly asked for legal clarification on core issues central to the defense, yet the court declined to provide guidance and counsel failed to intervene.

**Record Evidence: The Jury Note Revealing Confusion on Entrapment and Quantity**

During deliberations, the jury submitted a written note (marked as ***Court's Exhibit C in the record***) that plainly indicated a fundamental misunderstanding of the law required to reach a verdict:

- "Is there a difference in selling ten pills versus four?" (***Trial Tr. p. 432; Clerk Papers Court's Exhibit C)***
- "Legal definition of entrapment?" (***Trial Tr. p. 432; Clerk Papers Court's Exhibit C) Court's Exhibit C)***
- "Can there be entrapment in one count and not the others?" (***Trial Tr. p. 432; Clerk Papers Court's Exhibit C) Court's Exhibit C***)

These questions were not incidental; they struck at the heart of the defense theory. They revealed profound uncertainty about the core legal definitions and the application of the law across multiple counts, demonstrating that the initial instructions were insufficient to guide a rational verdict.

**The Trial Court's Refusal to Clarify the Law Violated Due Process**

Rather than providing reinstruction, clarification, or supplemental guidance, the court summarily instructed the jury: "You've received all the instructions of law in this case. Continue your deliberations." (***Trial Tr. p. 432***).

When jurors demonstrate confusion about controlling law, a court must respond in a manner that dispels the misunderstanding. The Supreme Court has long recognized that a failure to provide meaningful clarification risks misleading deliberations and violates due process. **Bollenbach v. United States, 326 U.S. 607, 612–13 (1946)** (holding that when a jury makes explicit its difficulties, the trial court should clear them away with concrete accuracy).

The court's refusal to address specific legal questions left the jurors to speculate and resolve complex legal questions on their own, effectively allowing deliberations to proceed under an atmosphere of known uncertainty regarding the central defense of entrapment.

**Deficient Performance: Counsel's Acquiescence to the Judicial Error**

Immediately after announcing its non-responsive answer to the jury note, the record reflects defense counsel's failure to act at this critical juncture:

THE COURT: "Objections to that by the Defense?"
MR. MUMFORD: "No, Your Honor." (***Trial Tr. p. 432***)

Reasonably competent counsel had a constitutional obligation under the Sixth Amendment to object, request a specific clarifying instruction on entrapment, or move for reinstruction on the differing drug quantity thresholds. Counsel's silence constituted deficient performance under **Strickland v. Washington, 466 U.S. 668 (1984)**, and fell below an objective standard of reasonableness expected of an advocate.

**Prejudice: The Failure to Clarify Undermined the Reliability of the Verdict**

The jury's explicit questions demonstrate that entrapment was a central and actively debated issue during deliberations. Without judicial clarification, the jury was left to speculate about crucial legal standards, including whether the quantity of pills determined the charge and how to apply the entrapment defense to those differing counts. This created a substantial risk that the jury applied an incorrect legal standard, violating the fundamental fairness required by the Fourteenth Amendment. ***Henderson v. Kibbe*, 431 U.S. 145 (1977)**.

Because the omitted clarification struck at the core of the defense theory, the error had a substantial and injurious effect on the verdict.

AEDPA Deference Does Not Bar Relief

AEDPA deference does not shield a state court decision that permits deliberations to proceed under known legal confusion, contrary to clearly established federal law (***Bollenbach, 326 U.S. at 612–13***). The state court's decision involved an unreasonable application of Supreme Court precedent, warranting federal habeas relief.

Relief Requested

Petitioner respectfully requests that the Court find that the trial court's refusal to clarify known juror confusion and counsel's failure to object violated clearly established federal law, and that the state court's rejection of this claim was an unreasonable application of Supreme Court precedent under ***28 U.S.C. § 2254***. Petitioner requests that the Court grant habeas relief by:

- Vacating the conviction and sentence and ordering a new trial where the jury is properly instructed; or, alternatively,

- Granting an evidentiary hearing to fully explore the content of the jury's confusion and the impact of the court's non-response on the verdict.

**GROUND SEVEN: The State Presented a Misleading and Inconsistent Narrative Concerning the Investigation Timeline and Confidential Informant While the Trial Court Allowed the Case to Proceed Without Corrective Measures, Violating Due Process and the Right to a Fair Trial**

Petitioner asserts that his rights under the ***Fifth***, ***Sixth***, and ***Fourteenth*** Amendments were violated when the State presented an internally inconsistent account of the investigation timeline — including the role of Nicholas Atkinson and the use of Austin Elliott's phone — while the trial court failed to intervene despite clear record conflicts between sworn documents and trial testimony.

**Sworn Documents and Trial Testimony Presented Conflicting Accounts of the Informant's Status**

The search-warrant affidavit and supporting narrative represented that Nicholas Atkinson voluntarily cooperated with investigators and agreed to assist further the investigation. (***Affidavit in Support of Search Warrant; Exhibit A-E***). However, trial testimony by Investigator Lee Sanders indicated that Atkinson was arrested and pressured with potential conspiracy charges before becoming a cooperating source. (***Trial Tr., Lee Sanders cross-examination)***.

This inconsistency was material because it affected:

- The credibility of the confidential informant,
- The voluntariness of the investigation's progression, and
- The reliability of the narrative used to establish Petitioner's intent.

The prosecution relied on Atkinson's cooperation to frame Petitioner as the primary supplier while minimizing coercive investigative tactics.

**The Timeline Presented to the Jury Omitted Critical Facts Contained in the Warrant Materials**

The sworn warrant narrative establishes that:

- Elliott was transported to the hospital and later pronounced deceased at approximately 3:03 a.m.
- Elliott's phone was seized pursuant to a warrant.
- The investigation's progression relied heavily on communications from that phone.

***(Underlying Facts and Circumstances in Support of Affidavit for Search Warrant; Exhibit A***).

Yet the trial narrative allowed jurors to infer continuity of communications and intent without clarifying who possessed or operated the device during critical time periods — an omission that distorted the investigative sequence.

A conviction obtained through a materially misleading presentation violates due process. ***Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957).***

***The Trial Court Allowed the State to Tell a "Complete Story" Despite Recognizing the Prejudicial Risk***

During pretrial hearings, the court acknowledged that details surrounding Elliott's death were potentially prejudicial and required limitation. **(1/24/2022 Motion Hearing, pp.23–25)**. Nevertheless, the State was permitted to present the investigation narrative in a manner that linked Petitioner to emotionally charged events while excluding clarifying context that would have mitigated prejudice. When a court allows a narrative that creates a false or misleading impression of key facts, due process is violated even if individual statements are technically accurate. ***Miller v. Pate*, 386 U.S. 1 (1967).**

**Defense Counsel Failed to Challenge the Narrative Inconsistencies or Request Corrective Instructions**

Despite possessing the affidavit materials and transcript discrepancies, defense counsel did not:

- Impeach Investigator Sanders with the conflict between voluntary cooperation and arrest testimony,
- Seek limiting instructions concerning investigative chronology, or
- Argue that the State's presentation created a misleading impression of events.

This failure deprived the jury of critical context necessary to evaluate the reliability of the State's case and constituted ineffective assistance under ***Strickland v. Washington, 466 U.S. 668 (1984)***.

***The Combined Effect Rendered the Trial Fundamentally Unfair***

The State's narrative:

- Framed the investigation as organically progressing toward Petitioner,
- Obscured coercive investigative tactics,
- Allowed jurors to view Petitioner through a distorted timeline shaped by emotionally charged facts.

Because the trial court permitted this presentation without meaningful correction — and defense counsel failed to challenge it — the resulting verdict was obtained in violation of due process and the right to a fair adversarial proceeding.

**GROUND SEVEN: The State Presented a Materially Misleading Investigative Narrative Concerning the Confidential Informant, Timeline, and Phone Communications, and the Trial Court Allowed the Jury to Deliberate Under a False Impression — Violating the Due Process Clause**

**Constitutional Framework: The Duty to Present a Truthful Narrative**

The Fifth and Fourteenth Amendments prohibit the State from obtaining a conviction through the use of false evidence or by allowing a materially misleading impression of the facts to go uncorrected.

- ***Napue v. Illinois, 360 U.S. 264 (1959)*** — A conviction obtained through the use of false evidence, known to be such by the State, violates Due Process.
- ***Miller v. Pate, 386 U.S. 1 (1967)*** — Due process is violated when the prosecution paints a "distorted" or "misleading" picture of the facts, even if individual statements are not technically perjury.
- ***Giglio v. United States, 405 U.S. 150 (1972)*** — The State has an affirmative duty to correct false testimony that relates to a witness's credibility or motivation to cooperate.

**Record Evidence: The Distorted "Voluntary Cooperation" Narrative**

The State's investigative narrative relied on the portrayal of Nicholas Atkinson as a "voluntary" cooperator. The sworn search-warrant affidavit represented that Atkinson agreed to assist investigators freely. (***Exhibit A at 1-3***).
However, trial testimony by Investigator Lee Sanders revealed a starkly different reality: Atkinson only became a "source" after being arrested, detained, and threatened with felony conspiracy charges. (***Trial Tr. Vol. I, at 130-147***). By presenting Atkinson's cooperation as organic and voluntary while suppressing the coercive circumstances of his detainment, the State created a materially misleading impression of the informant's credibility and the investigation's legitimacy, in direct violation of ***Napue*** and ***Giglio***.

**The "Impossible Timeline" and Digital Evidence Distortion**
The State's theory of intent and causation relied on a linear timeline anchored by Austin Elliott's death. The sworn warrant materials establish that Elliott was pronounced deceased at approximately **3:03 a.m.** (***Exhibit D,E,G Affidavit for search for Elliot's Device; Sanders Testimony***).
Nevertheless, the digital extraction records (***Exhibits L, M, and N with original petition***) reflect ongoing, outgoing text communications from Elliott's device hours *after* his reported death

and *after* Petitioner was already in police custody (approximately 10:00 a.m.). By presenting a "complete story" to the jury that omitted these chronological impossibilities, the State painted a distorted picture of the investigative sequence. This "half-truth" narrative prevented the jury from considering third-party involvement or investigative manipulation, violating the principles of ***Miller v. Pate***.

**Judicial Failure: Refusal to Correct a Known Prejudicial Narrative**

During pretrial hearings, the trial court explicitly acknowledged that the details of the overdose and death were **"too prejudicial"** and required strict limitation. (***Trial Trans. at p. 25, line 29***). Despite this finding, the Court allowed the State to present a narrative that linked Petitioner to an emotionally charged death while simultaneously excluding the context (the timeline discrepancies and informant coercion) that would have mitigated that prejudice. When a court recognizes a "prejudice risk" but allows a misleading narrative to proceed without corrective measures, it fails its constitutional duty as a neutral arbiter of a fair trial.

**Deficient Performance: Counsel's Failure to Expose the False Impression**

Despite possessing the warrant materials (***Exhibit D,E,G***) and hearing the conflicting trial testimony, defense counsel failed to:

1. **Impeach** Investigator Sanders with the sworn affidavit's false claim of "voluntary" cooperation;
2. **Expose** the physical impossibility of the post-3:03 a.m. text messages; and
3. **Request** curative instructions to address the State's misleading presentation.

   This failure allowed a "sanitized" and distorted version of events to reach the jury unchallenged, satisfying both prongs of ***Strickland v. Washington, 466 U.S. 668 (1984)***.

**The Cumulative Effect: A Fundamental Breakdown of Due Process**

Ground Seven does not challenge isolated errors; it addresses the **cumulative effect** of conflicting cooperation narratives, an "impossible" digital timeline, and an emotionally charged framing of uncharged conduct. When multiple trial irregularities combine to undermine the reliability of the verdict, due process is violated even if each issue viewed separately might appear harmless. ***Taylor v. Kentucky, 436 U.S. 478 (1978)***; ***United States v. Bermea, 30 F.3d 1539 (5th Cir. 1994)***.

**AEDPA Analysis: Unreasonable Application of Supreme Court Precedent**

Federal habeas relief is warranted under ***28 U.S.C. § 2254(d)(1)*** because the state court's decision was an **unreasonable application** of ***Napue***, ***Miller***, and ***Giglio***. No reasonable jurist could conclude that a trial remains "fundamentally fair" when the State is permitted to build its case on an investigative timeline and informant status that the record proves were misleading.

**Relief Requested**

Petitioner respectfully requests that this Court vacate the conviction and sentence, or in the alternative, grant an evidentiary hearing to resolve the material conflicts between the State's sworn investigative documents and the narrative presented to the jury.

## GROUND EIGHT: Improper Judicial Participation, Coercive Pretrial Commentary, and Narrative Coaching Violated the Right to a Neutral Tribunal and Rendered the

## Trial Fundamentally Unfair

### Constitutional Framework: The Absolute Right to a Neutral and Detached Judge

The Fourteenth Amendment Due Process Clause guarantees every criminal defendant a "neutral and detached judge."

- ***In re Murchison, 349 U.S. 133, 136 (1955)*** — "A fair trial in a fair tribunal is a basic requirement of due process."
- ***Tumey v. Ohio, 273 U.S. 510 (1927)*** — Even the *appearance* of partiality violates the constitutional requirement of a neutral arbiter.
- ***United States v. Davila, 569 U.S. 597, 608–10 (2013)*** — Judicial participation that exerts "coercive weight" on a defendant's strategic choices is constitutionally prohibited.

The Fifth Circuit has held that a judge violates due process when he **"enters the arena"** or appears aligned with the prosecution. ***United States v. Candelaria-Gonzalez, 547 F.2d 291, 297 (5th Cir. 1977)***; ***United States v. Bermea, 30 F.3d 1539, 1569–70 (5th Cir. 1994)***.

### Record Evidence: Coercive Judicial Commentary and Sentencing Pressure

The record reflects that during pretrial proceedings, the Court abandoned its role as a neutral arbiter by directly addressing the Petitioner regarding his sentencing exposure in a manner that exerted unconstitutional pressure. Specifically, the Court utilized its authority to underscore the risks of rejecting the State's position by emphasizing the severity of potential punishment. (***Trial Trans at pp. 28-30***).

This conduct transcends mere "cautionary information." When a judge uses the bench to highlight the grim reality of a sentence while a defendant is weighing their right to a trial, it carries a **"coercive weight"** that undermines the voluntariness of the adversarial process. ***Davila, 569 U.S. at 610.***

### Narrative Coaching: The Court as the Architect of the State's Theory

At the January 24, 2022, motion hearing, the Court crossed the line from ruling on evidence to **coaching the State's narrative.** The Court actively discussed how the prosecution should present the death of Austin Elliott, instructing the State on which details to include to maintain the veneer of a fair trial while still allowing a prejudicial death-narrative to reach the jury. (***Trial Trans at pp. 23–25***).

The Court specifically queried the State on its presentation: **"So you're just going to say he's deceased?"** (***Trial Trans at p. 23, line 18***). The Court then provided guidance on how to link that death to the investigative timeline, functioning as a "technical advisor" to the prosecution. This **"narrative coaching"** effectively curated the story presented to jurors, ensuring the State could use emotionally charged facts that the Court itself had already formally labeled **"too prejudicial."** (***Trial Trans at p. 25, line 29***).

**Structural Error: The Appearance of Alignment with the Prosecution**

The cumulative effect of the Court's conduct—coercive sentencing remarks, personal engagement with the Petitioner, and narrative coaching for the State—created an unmistakable appearance that the Court had aligned itself with the prosecution.

Under ***Liteky v. United States, 510 U.S. 540 (1994),*** judicial remarks that reveal such a high degree of favoritism or antagonism as to make fair judgment impossible violate the Constitution. Because the Court's participation occurred at the critical stage immediately preceding jury selection, it infected the entire framework of the trial. Structural errors affecting judicial neutrality are not subject to harmless-error analysis. ***Murchison, 349 U.S. at 136.***

**Deficient Performance: Counsel's Failure to Protect Judicial Neutrality**

Despite the Court's improper participation and coaching, defense counsel failed to lodge a single objection, move for recusal, or seek a mistrial. Counsel's failure to guard the "neutrality of the tribunal" fell below an objective standard of reasonableness under ***Strickland v. Washington, 466 U.S. 668 (1984).*** Had counsel objected to the Court's coaching of the State's narrative or the coercive sentencing remarks, there is a reasonable probability the record would have necessitated a different venue or judge to preserve the integrity of the proceeding.

**AEDPA Analysis: Unreasonable Application of Neutrality Standards**

Federal habeas relief is warranted under ***28 U.S.C. § 2254(d)(1)*** because the state court's adjudication involved an **unreasonable determination of the facts** and an unreasonable application of clearly established Supreme Court precedent. No reasonable jurist could conclude that a trial remains "fundamentally fair" when the presiding judge coaches the prosecution on

how to frame its most prejudicial evidence while simultaneously pressuring the defendant on his sentencing exposure.

**Relief Requested**

Petitioner respectfully requests that this Court vacate the conviction and sentence, as the lack of a neutral and detached judge constitutes a structural error requiring automatic reversal, or in the alternative, grant an evidentiary hearing to determine the full extent of the judicial participation in the State's narrative development.

**GROUND NINE: Structural Denial of the Right to an Impartial Jury Through Court-Sanctioned Seating of Jurors with Professional Ties to State Witnesses and Counsel's Passive Acquiescence.**

## PRELIMINARY STATEMENT

The Sixth Amendment guarantees a criminal defendant an "indifferent" and impartial jury. ***Irvin v. Dowd, 366 U.S. 717, 722 (1961)***. This right is violated when a trial court seats a juror despite "implied bias"—an institutional relationship so intimate that no "mechanical assurance" can cure the risk of partiality. ***Smith v. Phillips, 455 U.S. 209, 217 (1982).*** Here, the record reflects a wholesale collapse of the adversarial balance, caused by the Trial Court's legal errors and Defense Counsel's procedural failures.

**FACTUAL FOUNDATION: THE RECORD OF INSTITUTIONAL BIAS**

The trial record establishes an objective, professional alignment between the seated jury and the prosecution's witness list:

1. Juror No. 11 (Owen Chandler Parker / Panelist 20): Disclosed she was a schoolmate of lead investigator Lee Sanders and her husband worked at the Madison Police Department with "all of the other witnesses" (Tucker, Cooley, Nelson, Hobson, Wigley, and Cross). (***Trial Transcript p. 51, lines 16–29; Trial Transcript p. 52, lines 1–4***).
2. Juror No. 2 (Monica Artis): Disclosed she was the "trainer and supervisor" for State Expert Archie Nichols and had a personal business relationship with the Prosecutor. (***Trial Transcript p. 53, lines 25–27; Trial Transcript p. 92, lines 18–20***).
3. Forced Exhaustion: Because the Court denied cause challenges for these jurors, the Defense announced, "Defense is out of strikes." (***Trial Transcript p.99, line 1***). The Court then mandated: "The Court... has no choice but to seat Panelist No. 3, Panelist No. 10 and Panelist No. 14." (***Trial Transcript p.*****105, lines 1–3**).

**THE TRIAL COURT'S STRUCTURAL ERROR**

The Trial Court failed in its affirmative duty to ensure a neutral panel. Under Mississippi Code Ann. § 13-5-79, a juror who is not "indifferent" must be struck for cause.

- **What the Judge Should Have Done:** Under ***Mississippi Rule of Criminal Procedure 18.3(c)(1)***, the Court should have resolved any doubt about Juror 11's "insurmountable" bias in favor of the Petitioner.
- **What the Judge Did:** The Court denied the strike, relying solely on the juror's perfunctory "Yes" to a leading question about fairness. ***(Tr. 93, line 16; Tr. 94, line 28)***.
- Constitutional Breach: By forcing the Defense to use peremptory strikes on "impliedly biased" jurors, the Court created a Structural Error that "infected the entire trial process." **Virgil v. Dretke, 446 F.3d 598, 607 (5th Cir. 2006).**

## INEFFECTIVE ASSISTANCE OF COUNSEL (IAC)

To the extent the State argues the issue was not fully preserved, Petitioner asserts a claim of Ineffective Assistance of Counsel under ***Strickland v. Washington, 466 U.S. 668 (1984).***

1. **Deficient Performance:** While Counsel correctly identified the bias (***Trial Transcript p.93, line 12***), his performance became legally deficient when he: .
   - Exhausted Strikes prematurely: Counsel failed to reserve a strike for Juror 11 after the Court denied the cause challenge, leaving the Defense "out of strikes." (***Trial Transcript p.99, line 1***).
   - Filed an "Untimely" Batson Challenge: Counsel failed to raise a ***Batson*** challenge until after the jury was tendered. The Court's ruling that the motion was "untimely" (***Trial Transcript p. 101, line 12***) is prima facie evidence of deficient performance.
2. **Prejudice:** Because the seating of a biased juror is a Structural Error, prejudice is presumed. ***Young v. United States, 481 U.S. 787 (1987)***. Counsel's "passive acquiescence" allowed an institutionally aligned jury to decide the Petitioner's fate.

## CONCLUSION & RELIEF REQUESTED

The Trial Court's failure to strike biased jurors for cause, coupled with Counsel's procedural lapses, resulted in a jury pool that was socially and professionally tethered to the State's witnesses. This structural breakdown rendered the trial fundamentally unfair.

Petitioner respectfully requests that this Court VACATE the conviction and sentence, or GRANT a ***Remmer*** hearing to develop the record regarding Juror No. 11's extra-judicial influences.

**.GROUND TEN: The Trial Court Violated Due Process and the Sixth Amendment by Refusing to Clarify Explicit Jury Confusion Regarding Entrapment and the Count-by-Count Application of the Law.**

## CLEARLY ESTABLISHED FEDERAL LAW

The U.S. Supreme Court mandates that "(w)hen a jury makes its difficulties explicit, the trial judge has a duty to clear them away with concrete accuracy." ***Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946).** A conviction "ought not to rest on an equivocal direction to the jury on a basic issue." ***Id. at 614.*** Under the ***Fourteenth*** Amendment, Due Process is violated when a jury is permitted to reach a verdict while laboring under a documented misunderstanding of the "controlling law." ***Weeks v. Angelone, 528 U.S. 225, 234 (2000).***

**THE RECORD OF LEGAL IMPASSE**

The record establishes that the jury reached a specific legal impasse regarding the Petitioner's **sole theory of the case: Entrapment** (**Trial Trans. p. 377, line 23**). This collapse occurred in two distinct stages:

1. **The Instructional Vacuum (Pre-Deliberation):**
   During the Instruction Conference, the Court expressed open skepticism regarding the defense, initially stating it "doesn't believe D13 is a proper entrapment instruction" (**Trial Trans. p.. 378, lines 20–21**) and that it "does not see a factual basis" for it (**Trial Trans. p.. 379, lines 28–29**). Although the Court eventually granted Instruction 17 (D13-B), it did so while explicitly telling the parties on the record, "I don't believe there's a factual basis for this" (**Trial Trans. p.. 385, lines 24–25**).
2. **The Explicit Confession of Confusion (Exhibit C3):**
   During deliberations, the jury submitted a written note articulating three distinct areas of legal confusion (**Trial Trans. p.. 388, line 26**):
   - **Count Application:** Whether entrapment could apply to "some counts but not others."
   - **Legal Definition:** A request for a clearer definition of entrapment than what was provided in Instruction 17.
3. **Quantity Distinction:** Whether there was a legal difference between selling different pill quantities as it related to the defense.

**JUDICIAL DUTY VS. TRIAL PERFORMANCE**

| CONSTITUTIONAL/STATUTORY DUTY | TRIAL RECORD ACTION |
| --- | --- |
| **Duty to Dispel Confusion:** Under *Bollenbach*, the judge must respond to explicit confusion with "concrete accuracy." | **Failure to Clarify:** The Judge issued a non-responsive direction: "You've received all the instructions of law. Please continue your deliberations" (**Trial Trans. p.389, lines 28–29**). |

| | |
|---|---|
| **Mandatory Instruction:** *Miss. Code § 99-17-35* requires the judge to instruct on "principles of law" when requested. | **Sanctioned Speculation:** By refusing to answer, the Judge allowed the jury to speculate on whether they could "split" the verdict—the core of the defense **(Trial Trans. p.377, line 6)**.could "split" the verdict—the core of the defense **(Trial Trans. p.. 377, line 6)**. |
| **Effective Assistance:** Counsel has a duty to object to inadequate instructions to protect the "adversarial process." | **Passive Acquiescence:** Defense Counsel failed to object to the "no-answer" or propose a supplemental instruction to clarify the count-by-count application. |

### UNREASONABLE APPLICATION OF FEDERAL LAW

The state court's decision to allow the verdict to stand is an unreasonable application of ***Bollenbach.*** The jury's question regarding "some counts but not others" proved that the original instructions were "ambiguous and misleading" as applied. Because entrapment was the **"only theory"** of the case (**Trial Trans. p.377, line 23**), the Court's refusal to provide "appropriate judicial guidance" created a Structural Error. A jury that admits it does not understand the only available defense cannot properly acquit or convict; therefore, the resulting verdict is inherently unreliable and "infected by known legal error."

### INEFFECTIVE ASSISTANCE OF COUNSEL (IAC)

To the extent this issue was not fully preserved, Petitioner asserts a claim of Ineffective Assistance under ***Strickland v. Washington, 466 U.S. 668 (1984)***.

- **Deficient Performance:** Counsel's "passive acquiescence" to the Court's refusal to help a confused jury fell below an objective standard of reasonableness.
- **Prejudice:** Because the jury was left to guess the elements of the only theory of the case, there is a "reasonable probability" that the outcome would have been different had Counsel demanded a supplemental instruction.

## GROUND ELEVEN: The Trial Court's Coercive Pretrial Commentary and Direct Participation in Plea Discussions Constituted an Unreasonable Application of Federal Law and Violated the Due Process Right to an Impartial Tribunal.

### PRELIMINARY STATEMENT

The Due Process Clause requires a "neutral and detached judge." ***In re Murchison*, *349 U.S. 133, 136 (1955)***. ***Federal Rule of Criminal Procedure 11(c)(1)*** explicitly prohibits a judge from participating in plea discussions. The Supreme Court has clarified that while a judge's participation isn't an automatic reversal, a defendant can still show that the judge's comments prejudiced the outcome or overbore their will. ***United States v. Davila, 569 U.S. 597 (2013).***

**THE RECORD OF JUDICIAL COERCION**

The record reflects that the Trial Court abandoned its role as a neutral arbiter and directly applied coercive pressure concerning the potential sentence:

- **Direct Engagement on Exposure:** ***The Court determined the maximum exposure to be "264 years" and then directly asked the Petitioner: "Mr. Allen, do you understand that, if a jury were to return a verdict that you for this crime, you could be sentenced to up to 264 years to serve, the vast majority of it being day for day without possibility of parole?" (Trial Trans. p.12, lines 12–23).***
- **Coercive Hypothetical: The Court reinforced this pressure with a vivid, "extreme example" intended to influence the plea decision:** ***"If a jury found you guilty of this crime, do you understand that you could get on a bus headed to the penitentiary with somebody who committed first-degree murder... and you would still be sitting there?" (Trial Trans. p.13, lines 1–9).***
- **Age and Finality:** ***The Court emphasized the Petitioner's age ("Thirty-three years old") while contrasting the State's 30-year offer with the mandatory maximum sentence required by law. (Trial Trans. p.28, lines 13–20; Trial Trans. p.29, lines 8–10). This was a direct judicial exhortation to accept the plea.***

**ARGUMENT: THE VIOLATION OF DUE PROCESS**

The state court's decision to allow the conviction to stand is an **unreasonable application** of federal law. The judge's repeated, direct engagement with the Petitioner regarding his age and potential life imprisonment was not neutral case management; it was a function of coercion.

- This conduct violates the "appearance of justice" mandated by *Murchison*. A defendant should not feel that the judge who is trying their case has already determined their fate should they exercise their right to a trial.
- The fact that the Petitioner ultimately went to trial does not render the error "harmless." The judicial coercion poisoned the pretrial process and cast a shadow of impartiality over the entire proceeding, resulting in a **structural defect**.

**INEFFECTIVE ASSISTANCE OF COUNSEL (IAC)**

To the extent that this Court finds the issue procedurally defaulted, Petitioner asserts a claim of **Ineffective Assistance of Counsel** under ***Strickland v. Washington.***

- **Deficient Performance:** A reasonably competent attorney would have immediately objected to the judge's direct interaction with the client regarding sentencing scenarios. Counsel remained largely silent during these exchanges. (**Trial Trans p. 12, 13, 28, 29**). Counsel should have moved for **recusal** of the Judge based on these comments to preserve the appearance of a fair trial.
- **Prejudice:** The prejudice is evident in the record. The Judge had the Petitioner's age and the mandatory maximum in mind before trial began. The resulting sentence of 124 years without parole, immediately after these discussions, is objective proof that the **prejudice was real**, not hypothetical.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner respectfully submits that the Trial Court's actions violated the right to a neutral tribunal.

Petitioner requests that this Court:

1. **VACATE** the conviction and sentence, as the trial was presided over by a jurist who had abandoned constitutional neutrality;
2. **GRANT** an evidentiary hearing to examine the full extent of the pretrial judicial commentary and its effect on the right to an impartial judge; and
3. **REMAND** for a new trial before a different, neutral judge.

**GROUND TWELVE: The 124-Year "Day-for-Day" Sentence is Unconstitutional Under the Sixth and Fourteenth Amendments Because the Trial Court Relied Upon Judicial Fact-Finding to Increase the Mandatory Minimum and Structural Severity of Punishment.**

**CLEARLY ESTABLISHED FEDERAL LAW**

The Sixth Amendment, as interpreted in ***Apprendi v. New Jersey, 530 U.S. 466 (2000),*** and ***Alleyne v. United States,*** 570 U.S. 99 (2013), mandates that any fact—other than the existence of a prior conviction—that increases the legally authorized punishment or mandatory sentencing consequences must be submitted to a jury and proven beyond a reasonable doubt. Under ***Alleyne***, any fact that alters the **legally mandated structure** of a sentence—such as moving it from "parole-eligible" to "day-for-day"—is an element of the offense that must be found by a jury.

## FACTUAL FOUNDATION: THE RECORD OF EXTRA-VERDICT FINDINGS

The record establishes that the Trial Court assumed the role of a fact-finder to trigger sentencing enhancements that the jury's general verdict alone did not authorize:

1. **General Verdict vs. Specific Enhancements:** The jury returned only general verdicts of "guilty as charged" for Counts I–IV. (**Tr. 432–434; p. 5, lines 3–8**). The record reflects no **Special Interrogatory** or specific jury finding that a firearm was possessed "in relation to" the drug offenses as required to trigger the doubling provision of **Miss. Code Ann. § 41-29-152.**
2. **Judicial Fact-Finding of Mens Rea:** At sentencing, the Court made an independent factual determination regarding Petitioner's subjective "knowledge" that exceeded the jury's findings, stating: **"This Court just can't get past the fact you knew these pills killed and you sold them anyway." (Tr. 451, lines 18–20; p. 5, lines 18–20)**. This finding of a "guilty mind" was never submitted to the jury nor included in the jury instructions.
3. **The Stacking of Enhancements:** The Court applied a "stacking" of Subsequent Drug Offender status (§ **41-29-147**) and the Firearm Enhancement (§ **41-29-152**) to unconstitutionally double the sentencing range on Count II to **80 years. (Tr. 451; p. 5, line 14).**

## ARGUMENT: STRUCTURAL ERROR AND ILLEGAL SENTENCE

The state court's decision to affirm this sentence is an **unreasonable application** of ***Alleyne*** and ***Apprendi***.

- **Conversion of Sentence Structure:** While a court may find the "fact" of a prior conviction under ***Apprendi*** (evidenced by **Sentencing Exhibits SS1 and SS2** (***Clerk Pp. 8, lines 11–12***)**),** it cannot find the "fact" of firearm possession to double a sentence or eliminate parole eligibility. By finding the firearm "fact" independently, the Court converted a parole-eligible drug sentence into a 100-year **"day-for-day"** term of incarceration (***Clerk Pp. 5, lines 14–15***).
- **The "Trial Penalty" and Fundamental Unfairness:** The cumulative application of these enhancements created a "Trial Penalty" so severe it rendered the proceedings fundamentally unfair. The Court used qualitative factual conclusions—including moral judgments about the offense—rather than jury-determined facts to impose a virtual life sentence on a 33-year-old man (***Trial Trans.p. 386, lines 12–14***).

## AEDPA-DEFERENCE ANALYSIS AND PREJUDICE

Relief is warranted under **28 U.S.C. § 2254(d)** because the Trial Court's reliance on extra-verdict facts to increase the structural severity of the sentence is a direct violation of clearly established Supreme Court precedent.

The error was not harmless. The Court imposed an aggregate 124-year sentence grounded in its own factual conclusions. Absent these judicial findings—specifically regarding the firearm and the "knowledge" of prior deaths—the sentence authorized by the jury's verdict alone would have been materially different and parole-eligible.

**INEFFECTIVE ASSISTANCE OF COUNSEL (IAC)**

To the extent the State argues this error was "waived," Petitioner asserts that **Counsel's silence** while the Court engaged in unconstitutional fact-finding constitutes Ineffective Assistance under ***Strickland v. Washington***. A reasonably competent attorney would have demanded a **Special Interrogatory Verdict Form** to ensure that any enhancement was found by the jury. Counsel's failure to object to an **80-year enhancement** on a single count is a manifest deficiency that resulted in an illegal sentence.

**REQUESTED RELIEF**

**WHEREFORE,** Petitioner respectfully requests that this Honorable Court **VACATE** the unconstitutional 124-year sentence and **REMAND** for re-sentencing consistent with the Sixth and Fourteenth Amendments.

**GROUND THIRTEEN: Ineffective Assistance and Constructive Abandonment by Direct Appeal Counsel — Cause and Prejudice Excusing Any Procedural Default**

Petitioner was denied the effective assistance of appellate counsel when counsel failed to pursue meritorious federal claims and effectively ceased representation without formally withdrawing from the case or obtaining permission from the appellate court. This conduct violated the ***Sixth*** and ***Fourteenth*** Amendments and constitutes abandonment sufficient to excuse any procedural default.

**Constructive Abandonment and Failure to Withdraw**

The record reflects that appellate counsel stopped actively representing Petitioner after initiating the appeal, yet never filed a motion to withdraw, never sought leave of court, and never ensured substitute counsel or meaningful advocacy continued. Counsel's silence left Petitioner without

guidance, briefing, or preservation of substantial constitutional issues.(***Exhibit V-- Private Correspondence Letter*** )

Under clearly established federal law, an attorney may not simply disengage from representation without court approval. Constructive abandonment is treated as a breakdown of the adversarial process itself. See ***Maples v. Thomas, 565 U.S. 266 (2012)*** (attorney abandonment constitutes cause excusing procedural default); ***Penson v. Ohio, 488 U.S. 75 (1988)*** (absence of active appellate counsel is structural error).

**Failure to Raise Preserved Constitutional Claims**

Because counsel ceased meaningful advocacy, numerous preserved federal claims were omitted from the appeal, including:

- Judicial participation during pretrial and plea-related proceedings;
- Admission of an inflammatory death narrative despite the trial court's recognition that such evidence was "too prejudicial" (***Trial Tr. 1/24/2022 at p.25***);
- Refusal to clarify jury confusion;
- Seating jurors who acknowledged personal relationships with State witnesses after defense strikes were exhausted;
- Sentencing enhancements imposed without jury findings.

Appellate counsel's failure to raise these issues was not a strategic choice but a direct result of abandonment.

**Deficient Performance Under Clearly Established Federal Law**

The Supreme Court has held that a criminal defendant is entitled to effective representation on direct appeal. ***Evitts v. Lucey, 469 U.S. 387 (1985)***. Counsel's performance becomes constitutionally deficient when representation ceases in practice even if counsel's name remains on the record. ***Smith v. Robbins, 528 U.S. 259 (2000)***.

Here, counsel neither advanced Petitioner's strongest claims nor complied with procedural requirements for withdrawal, leaving Petitioner functionally unrepresented at a critical stage.

**Prejudice and Structural Harm**

Prejudice is established because appellate counsel's abandonment prevented meaningful appellate review of substantial constitutional violations. When counsel abandons a defendant without notice or substitute representation, courts presume prejudice because the adversarial process collapses. ***Penson, 488 U.S. at 88; Maples, 565 U.S. at 283.***

This abandonment also constitutes "cause" excusing any procedural default under ***Coleman v. Thompson, 501 U.S. 722 (1991)***, as clarified by ***Maples***.

**Resulting Constitutional Violation**

By ceasing representation without withdrawal or court approval and failing to raise critical federal claims, appellate counsel deprived Petitioner of the effective assistance guaranteed by the

Sixth and Fourteenth Amendments. The state court's failure to remedy this abandonment was contrary to clearly established federal law.

**Relief Requested**

WHEREFORE, Petitioner respectfully requests that this Court excuse any procedural bar, grant habeas relief, and vacate the conviction and sentence or order a new direct appeal with effective counsel. Any relief that the court deems Appropriate

**Ground Fourteen: Denial of the Constitutional Right to Present a Complete Defense and Compulsory Process**

**CLEARLY ESTABLISHED FEDERAL LAW**

The Sixth and Fourteenth Amendments guarantee a criminal defendant the right to present witnesses in his own defense and to compel their attendance at trial. ***Washington v. Texas, 388 U.S. 14, 19 (1967).*** This right is a "fundamental element of due process" because the adversarial system depends on the jury hearing the defendant's version of events through competent testimony. ***Chambers v. Mississippi, 410 U.S. 284, 302 (1973***). The Supreme Court has repeatedly held that "arbitrary or disproportionate" interference with defense evidence violates clearly established federal law. ***Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).**

**FACTUAL FOUNDATION: THE SUBPOENAED BUT UNCALLED LEAD INVESTIGATOR**

The record establishes that **Investigator Jon Cooley** was identified by the defense as a material witness essential to challenging the State's investigative timeline and entrapment defense.

1. **Notice of Materiality:** Defense counsel formally placed Cooley on the **Proposed Witness List** filed January 26, 2022 (**Clerk's Papers 67**), specifically noting that his testimony was expected to address the procedures used during the investigation.
2. **Compulsory Process:** Counsel issued a **subpoena** for Cooley's appearance (**Clerk's Papers 178**), establishing that he was available and under the defense's control.
3. **The Testimony Void:** Despite subpoenaing him, counsel failed to call Cooley to the stand. Instead, counsel attempted to challenge the investigation's credibility by referencing Cooley's "break room" statements and conduct during closing arguments (**Trial Tr. 416–418**).
4. **The Trial Penalty:** The State objected, arguing the defense "failed to produce" the witness despite his availability. The Court **sustained** the objection (***Trial* Tr. 417**), effectively instructing the jury to ignore the defense's narrative regarding Cooley because it lacked an evidentiary foundation.

**CONSTITUTIONAL ERROR: STRUCTURAL COLLAPSE OF THE DEFENSE**

The failure to present a subpoenaed lead investigator, paired with the Court's subsequent restriction on referencing his conduct, denied Petitioner a meaningful opportunity to present a complete defense. The Constitution protects the **practical ability** to place material testimony before a jury, not just the abstract right to issue a subpoena. ***Washington*, *388 U.S. at 19.***

Jon Cooley was central to factual disputes involving the **confidential informant's coercion** and the **impossible digital timeline** (***Trial*** **Trans. 130–147**). By withholding his testimony and then being barred from arguing his investigative flaws, the defense was stripped of its ability to counter the State's narrative. This created the exact type of "structural imbalance" condemned in ***Crane v. Kentucky*** and ***Chambers*.**

**PREJUDICE: THE UNRELIABLE VERDICT**

The omitted testimony went to the heart of Petitioner's **only theory: Entrapment.** There is a "reasonable probability" that had the jury heard sworn testimony from Cooley regarding investigative pressure and timeline impossibilities, the outcome would have been different. ***Strickland v. Washington, 466 U.S. at 694.***

The prejudice was amplified when the State used Cooley's absence to signal to the jury that the defense was "hiding" a witness who would have been unfavorable. This shifted the burden of proof, forcing Petitioner to "prove" the investigator's flaws without the investigator's presence, violating the fundamental fairness required by the Fourteenth Amendment.

**PRAYER FOR RELIEF**

Because the state court proceedings resulted in the denial of Petitioner's Sixth and Fourteenth Amendment rights, habeas relief is warranted under **28 U.S.C. § 2254(d).** Petitioner respectfully requests that this Court **VACATE** the conviction and sentence and **REMAND** for a new trial where the defense may fully present its witnesses.

2-25-26

[signature]

Carlos Allen

# CERTIFICATE OF SERVICE

I, **Carlos Dominique Allen, #206733**, Petitioner, do hereby certify that I have this day served a true and correct copy of the foregoing **Second Amended Petition for Writ of Habeas Corpus** and all attached Exhibits upon the following parties via United States Mail, first-class postage prepaid:

**Office of the Attorney General of Mississippi**
**Attn: Habeas Corpus Division**
**Post Office Box 220**
**Jackson, MS 39205-0220**

This the 25th day of February, 2026.

Carlos Allen

**Carlos Dominique Allen, #206733**
**Mississippi State Penitentiary**
**P.O. Box 1057**
**Parchman, MS 38738**

**I. TABLE OF CONTENTS**

**I. INTRODUCTION** .......... 1
**II. JURISDICTION AND VENUE** .......... 1
**III. PARTIES** .......... 2
**IV. PROCEDURAL HISTORY** .......... 2
**V. STANDARD OF REVIEW UNDER 28 U.S.C. § 2254** .......... 2
**VI. GROUNDS FOR RELIEF** .......... 3

**GROUND ONE:** Structural Conflict of Interest — Trial Attorney as Hinds County Prosecutor (Exhibits K & L) .......... 3
**GROUND TWO:** Failure to Inquire Into Material Conflict and Breakdown in Representation (CP p. 88; Tr. p. 34) .......... 5
**GROUND THREE:** Ineffective Assistance — Failure to Present Exculpatory Text Messages and Challenge "Impossible Timeline" (Exhibits L-N) .......... 8
**GROUND FOUR:** Defective Digital Warrant — Material Omissions and Overbreadth (*Franks v. Delaware*) .......... 10
**GROUND FIVE:** Ineffective Assistance — Failure to Enforce Motion in Limine "Prejudice Gate" (Tr. p. 25-26) .......... 12
**GROUND SIX:** Due Process Violation — Refusal to Clarify Jury Confusion (Exhibit C3; Tr. p. 432) .......... 14
**GROUND SEVEN (REDUX):** Due Process Violation — Presentation of Materially Misleading Investigative Narrative (*Napue; Giglio*) .......... 19
**GROUND EIGHT:** Improper Judicial Participation and Narrative Coaching — Denial of Neutral Tribunal (Tr. p. 23-25) .......... 21
**GROUND NINE:** Structural Denial of Impartial Jury — Seating of Jurors with Professional Ties to State Witnesses (Tr. p. 51-53) .......... 23
**GROUND TEN:** Sixth Amendment Violation — Refusal to Clarify Entrapment and Count-by-Count Application (Tr. p. 377, 389) .......... 24
**GROUND ELEVEN:** Judicial Coercion — Direct Participation in Plea Discussions and "Maximum Sentence" Threats (Tr. p. 12-13, 28-29) .......... 26
**GROUND TWELVE:** Illegal Sentence — Unconstitutional Judicial Fact-Finding Under *Apprendi* (Exhibits SS1 & SS2) .......... 28
**GROUND THIRTEEN:** Constructive Abandonment by Appellate Counsel — Cause and Prejudice Excusing Default .......... 30
**GROUND THREE (REDUX):** Denial of Right to Present a Complete Defense — Failure to Call Investigator Jon Cooley (CP 67, 178) .......... 32

**VII. PRAYER FOR RELIEF** .......... 33
**VIII. INDEX OF EXHIBITS** .......... 34

## II. TABLE OF AUTHORITIES

### U.S. SUPREME COURT CASES

- *Alcorta v. Texas*, 355 U.S. 28 (1957) (p. 18)
- *Alleyne v. United States*, 570 U.S. 99 (2013) (p. 28)
- *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (p. 28)
- *Bollenbach v. United States*, 326 U.S. 607 (1946) (pp. 15, 25)
- *Chambers v. Mississippi*, 410 U.S. 284 (1973) (pp. 8, 12, 32)
- *Crane v. Kentucky*, 476 U.S. 683 (1986) (p. 32)
- *Cuyler v. Sullivan*, 446 U.S. 335 (1980) (p. 6)
- *Estelle v. McGuire*, 502 U.S. 62 (1991) (pp. 8, 12)
- *Franks v. Delaware*, 438 U.S. 154 (1978) (p. 11)
- *Giglio v. United States*, 405 U.S. 150 (1972) (pp. 10, 19)
- *Holloway v. Arkansas*, 435 U.S. 475 (1978) (pp. 4, 6-7)
- *Holmes v. South Carolina*, 547 U.S. 319 (2006) (pp. 8, 32)
- *In re Murchison*, 349 U.S. 133 (1955) (pp. 21, 27)
- *Liteky v. United States*, 510 U.S. 540 (1994) (p. 22)
- *Napue v. Illinois*, 360 U.S. 264 (1959) (pp. 9, 18-19)
- *Strickland v. Washington*, 466 U.S. 668 (1984) (pp. 8, 11, 16, 24, 28)
- *Tumey v. Ohio*, 273 U.S. 510 (1927) (p. 21)
- *United States v. Davila*, 569 U.S. 597 (2013) (pp. 21, 27)
- *Washington v. Texas*, 388 U.S. 14 (1967) (p. 32)
- *Weeks v. Angelone*, 528 U.S. 225 (2000) (p. 25)
- *Wood v. Georgia*, 450 U.S. 261 (1981) (pp. 4, 6)
- *Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787 (1987) (pp. 3-4, 24)

### FEDERAL STATUTES & RULES

- 28 U.S.C. § 2254 (p. 1)
- Fed. R. Crim. P. 11(c)(1) (p. 27)

Exhibit A.1

CASE NO. 2021020745

STATE OF MISSISSIPPI
MUNICIPAL COURT
CITY OF MADISON

## UNDERLYING FACTS AND CIRCUMSTANCES IN SUPPORT OF AFFIDAVIT FOR SEARCH WARRANT

PERSONALLY APPEARED before me, the undersigned officer of said court, Inv Lee Sanders, who stated under oath that the facts and circumstances relied upon in establishing the grounds for issuance of a SEARCH WARRANT for the real property or premises located at 2001 Main Street, within the City of Madison, Madison County, Mississippi are as follows:

On February 22, 2021 this Investigator along with officers of the Madison Police Department responded to 1029 Hwy 51 in Madison, Mississippi regarding a male subject passed out behind the wheel of a 2020 Toyota 4 Runner bearing MS license plate number MAJ4675. The individual was identified as Austin Edward Elliott of 213 Sunset Circle Madison, Ms. It was determined that Elliott was suffering from an Opioid overdose of Fentanyl. The vehicle was still in drive and the subjects foot was still on the brake. Responding officers were able to unlock the driver's door using an unlock kit and the vehicle was placed in park. Medical personnel began administering aid to Elliott and administered Narcan to him. This investigator went to the passenger side and discovered approximately eight (8) blue pills labeled M30 in the cup holder along with a bent straw containing residue. The pills varied in color from light blue to almost white in color. Personnel were able to revive Austin Elliott and transfer him to a stretcher preparing him to be transported by Pafford Ambulance. This Investigator had retrieved Elliott's cell phone that was in his lap. Major Robert Sanders spoke with Elliott who had become coherent and was able to provide the pass code to his phone which was (000000). Austin's father, Charles Elliott, was on scene and was standing next to Austin when he provided the pass code. Major Sanders explained to both individuals that we desired to further the investigation to possibly identify the source and supplier of the Fentanyl (M30). Both agreed and Austin gave permission to use his phone to further the investigation. This Investigator collected the phone and secured it and Inv. Justin Elliott secured the pills from the scene. This Investigator was able to determine that Austin had entered into an agreement with "Attkisson Nick" ph# 601-940-7448 who was later identified as Nicholas "Nick" Attkisson 6-13-1996 ssn# 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. Attkisson had agreed to purchase to purchase two (2) M30 pills from Elliott once he obtained the pills from a source identified as Carlos Allen ph# 769-524-0516.

Investigator Stephen Tucker met Charles Elliott at St Dominic's Hospital and they agreed to meet investigators at the Madison Police Department at 10am. At approximately 1am Austin Elliott was released from the hospital and they returned to 213 Sunset Circle in Madison. Charles stated once they got home Austin ate a small meal and returned to his bedroom to lay down. His wife set an alarm to check on him in an hour and his wife located Austin in his bedroom at 3:03am unresponsive. Charles stated that Austin had vomited in his bed and he moved him to the floor to begin CPR. Once investigators arrived on scene at 213 Sunset Circle, medical personnel were continuing CPR but were unable to revive him and he was pronounced deceased on scene. Inv Josh Fish from Madison County SO arrived on scene and a check of the residence was conducted. Inv. Fish collected assorted paraphernalia, assorted pills (not M30s) and a small amount of marijuana.
A search warrant was issued for the cell phone belonging to Austin Elliott to obtain data pertinent to this ongoing investigation.
At 0743 this investigator along with Inv Ricky Cross travelled to Nick's place of employment located at 212 Waterford Square in Madison, Ms. Investigators confronted Nicholas about his agreement to purchase two (2) M30 pills from Austin Elliott. Attkisson agreed to accompany Investigators back to the Madison Police Department to further the ongoing investigation.
On February 23, 2021 a Cooperating Source working under the direction and control of the Madison Police Department contacted Carlos Allen via 769-524-0516. Allen agreed to provide CS A-212 with ten M30 pills for an agreed amount of $200.00 plus an additional $100.00 for delivery and an outstanding debt. In exchange, Allen agreed to supply A-212 an additional M30 pill. Allen asked the source to provide a pin location for the meeting spot. A-212 then provided Allen a location pin via text message. The agreed spot was at SourceLink located at 5 Olympic Way in the City of Madison, Ms. Prior to the transaction, Inv. Tucker searched the Cooperating Source and the provided vehicle. Any personal property was removed and the source was given $300.00 in Official Funds that had been previously photocopied. A-212 travelled to 5 Olympic Way and remained there under surveillance of agents in the area. At 1015am, Allen arrived at 5 Olympic Way driving a 2020 black Nissan Rogue bearing Mississippi license plate number HNT8911.
At 1018, the transaction was completed and Allen departed the meeting location and began to travel back towards Hwy 51. At this point, agents took Allen into custody and secured him at the intersection of Olympic Way and Hwy 51. Agents recovered the Official Funds of $300.00 from the left front pants pocket of Allen on

Exhibit A

scene. The funds were photographed prior to removal and being secured. An additional $427.00 in US Currency was also recovered from Allen's front right pocket in a pair of shorts on Allen's person. Agents searched the immediate driver's area of the Nissan Rogue prior to the vehicle being secured for a search warrant.

AFFIANT

SWORN TO AND SUBSCRIBED before me this 23rd day of February, 2024.

MUNICIPAL JUDGE/COURT CLERK

Exhibit D

**RETURN**

I received this warrant on the 23 day of February, 2021, and have executed it as follows:

On the 24 day of February, 2021, at 8:00 A M., I searched the place described in said warrant and I left a copy of the warrant with Charles Elliott, the person controlling said place, together with a receipt for the items seized.

The following is an inventory of the things taken pursuant to the Warrant:

1 cellebrite report

This inventory was made in the presence of Ryan Wiggly, Bethany Hobson, Marcus Ogden, and Matthew Nelson.

I swear that this inventory is true and detailed in amount of all the things taken by me on this Warrant.

[signature]
Affiant

Subscribed and sworn to and returned before me this 1st day of March, 2021.

[signature]
Judge

Exhibit E

**AFFIDAVIT FOR SEARCH WARRANT**

STATE OF MISSISSIPPI
COUNTY OF **Madison**

This date personally appeared before me, the undersigned officer of said county, **Inv Lee Sanders**, known to me to be credible persons, who, after having been first duly sworn, depose and say:

1. That affiants have good reason to believe and do believe that certain things described herein are now being concealed in or about the following place in this county: **Madison**
2. That the place described above is occupied and controlled by: **Austin Edward Elliott**
3. That said things are particularly described as follows: **cellular telephone,Iphone 11 Pro Ser# DNPZK3YWN6XM**
4. **The search procedure for the electronic data contained in the cellular devices includes operating software and memory devices. The examination is to be performed in a laboratory, or other controlled environment, and may include the following techniques; a. Surveying various file "directories" and the individual files they contain; b. 'Opening or cursorily reading the first few "pages" of such file in order to determine their precise contents; c. "Scanning" storage areas to discover and possibly recovery recently deleted data; d. Scanning" storage areas for deliberately hidden files; ore. Performing key word searches through all electronic storage areas in existence that is intimately related to the subject matter of the investigation.**
5. The possession of the above described things is in itself unlawful (or the public has a primary interest in, or primary right to possession of, the above described things), in that said things are: **Pertinent to an ongoing investigation**
6. WHEREFORE, affiant(s) request that a Search Warrant be issued directing a search of the above described place and seizure of the above described things.

[signature]
Affiant

Sworn to and subscribed before me, this the 23rd day of February, 2024.

[signature]
Judge

Exhibit G

# SEARCH WARRANT

**STATE OF MISSISSIPPI**
**COUNTY OF Madison**

TO ANY LAWFUL OFFICER OF MADISON COUNTY, MISSISSIPPI:

WHEREAS, **Inv Lee Sanders**, known to me to be a credible person, who after having been duly sworn, depose and say:

1. That affiant has good reason to believe and does believe that certain things hereafter described are now being concealed in or about the following place in this county: Madison
2. That the place described above is occupied and controlled by: **Austin Edward Elliott**
3. That said things are particularly described as follows: **cellular telephone,Iphone 11 Pro Ser# DNPZK3YWN6XM**
   **The search procedure for the electronic data contained in the cellular devices includes operating software and memory devices. The examination is to be performed in a laboratory, or other controlled environment, and may include the following techniques; a. Surveying various file "directories" and the individual files they contain; b. 'Opening or cursorily reading the first few "pages" of such file in order to determine their precise contents; c. "Scanning" storage areas to discover and possibly recovery recently deleted data; d. Scanning" storage areas for deliberately hidden files; or e. Performing key word searches through all electronic storage areas in existence that is intimately related to the subject matter of the investigation.**
4. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are shown on a sheet headed "underlying Facts and Circumstances" which is attached to the Affidavit for Search Warrant.
5. This Court having examined and considered said affidavit, and also having heard and considered evidence in support thereof from the affiant(s) named therein does find that probable cause for the issuance of a Search Warrant does exist. THEREFORE, you are hereby commanded to proceed at any time in the day or night to the place described above and to search forthwith said place for the things specified above, making known to the person or persons occupying or controlling said place, if any, your purpose and authority for so doing, and if said things specified above to be found there to seize them leaving a copy of this warrant and a receipt for things taken; and bring said things seized before this Court instanter; and prepare a written inventory of the items seized, and have then and there this writ, with your proceedings noted thereon.
6. Do not interpret this writ as limiting your authority to seize all contraband and things the possession of which in itself is unlawful which you find incident to your search, or as limiting your authority to make otherwise arrest at the place described above.

Witness my hand this, the 23rd day of February, 2024.

[signature]
Judge

Exhibit F



his attorney, Mr. Gerald Mumford. Today is Monday, January 31st. It's approximately 9:43. The Court has qualified the jury in this case. We are set to pick the jury at one o'clock.

On Friday, a motion to continue trial was filed, Document No. 43, and Document No. 42, a motion to withdraw as counsel. The Court will hear Document No. 42, the motion to withdraw as counsel, first.

**MR. MUMFORD:** Your Honor, this is Gerald Mumford for Mr. Carlos Allen. I hereby withdraw that motion to withdraw as counsel.

**THE COURT:** All right. The next matter is a motion to continue the trial. That will be denied. The deadline for filing motions was January 31st -- no, excuse me, was January 24th for the hearing of pretrial motions. The actual deadline to file motions was, I believe, January 15th. Excuse me. That would be January 14th. The deadline to file motions was January 14th. The Court has reviewed the motion to continue. It is based on COVID. This Court would say it's tried cases all the way through COVID without any trouble whatsoever. So that will be denied.

**MR. MUMFORD:** Your Honor, may I make my record?

**THE COURT:** You don't make records in response to the Court's ruling. It was filed out

Exhibit J

CASE NO. 2021020733

STATE OF MISSISSIPPI
MUNICIPAL COURT
CITY OF MADISON

**UNDERLYING FACTS AND CIRCUMSTANCES
IN SUPPORT OF AFFIDAVIT FOR SEARCH WARRANT**

PERSONALLY APPEARED before me, the undersigned officer of said court, Inv Lee Sanders, who stated under oath that the facts and circumstances relied upon in establishing the grounds for issuance of a SEARCH WARRANT for the real property or premises located at 2001 Main Street, within the City of Madison, Madison County, Mississippi are as follows:

On February 22, 2021 this Investigator along with officers of the Madison Police Department responded to 1029 Hwy 51 in Madison, Mississippi regarding a male subject passed out behind the wheel of a 2020 Toyota 4 Runner bearing MS license plate number MAJ4675. The individual was identified as Austin Edward Elliott of 213 Sunset Circle Madison, Ms. It was determined that Elliott was suffering from an Opioid overdose of Fentanyl. The vehicle was still in drive and the subjects foot was still on the brake. Responding officers were able to unlock the driver's door using an unlock kit and the vehicle was placed in park. Medical personnel began administering aid to Elliott and administered Narcan to him. This investigator went to the passenger side and discovered approximately eight (8) blue pills labeled M30 in the cup holder along with a bent straw containing residue. The pills varied in color from light blue to almost white in color. Personnel were able to revive Austin Elliott and transfer him to a stretcher preparing him to be transported by Pafford Ambulance. This Investigator had retrieved Elliott's cell phone that was in his lap. Major Robert Sanders spoke with Elliott who had become coherent and was able to provide the pass code to his phone which was (000000). Austin's father, Charles Elliott, was on scene and was standing next to Austin when he provided the pass code. Major Sanders explained to both individuals that we desired to further the investigation to possibly identify the source and supplier of the Fentanyl (M30). Both agreed and Austin gave permission to use his phone to further the investigation. This Investigator collected the phone and secured it and Inv. Justin Elliott secured the pills from the scene. This Investigator was able to determine that Austin had entered into an agreement with "Attkisson Nick" ph# 601-940-7448 who was later identified as Nicholas "Nick" Attkisson 6-13-1996 ssn# 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. Attkisson had agreed to purchase to purchase two (2) M30 pills from Elliott once he obtained the pills from a source identified as Carlos Allen ph# 769-524-0516.

Investigator Stephen Tucker met Charles Elliott at St Dominic's Hospital and they agreed to meet investigators at the Madison Police Department at 10am. At approximately 1am Austin Elliott was released from the hospital and they returned to 213 Sunset Circle in Madison. Charles stated once they got home Austin ate a small meal and returned to his bedroom to lay down. His wife set an alarm to check on him in an hour and his wife located Austin in his bedroom at 3:03am unresponsive. Charles stated that Austin had vomited in his bed and he moved him to the floor to begin CPR. Once investigators arrived on scene at 213 Sunset Circle, medical personnel were continuing CPR but were unable to revive him and he was pronounced deceased on scene. Inv Josh Fish from Madison County SO arrived on scene and a check of the residence was conducted. Inv. Fish collected assorted paraphernalia, assorted pills (not M30s) and a small amount of marijuana.

It is with this information listed above that this Investigator respectfully requests a search warrant be issued for the cell phone belonging to Austin Elliott ph# 601-896-6404 ser# DNPZK3YWN6XM to recover data pertinent to this ongoing investigation

[signature]
AFFIANT

SWORN TO AND SUBSCRIBED before me this 23rd day of Febru 2021
20____.

[signature]
MUNICIPAL JUDGE/COURT CLERK

Exhibit K



**Gerald A. Mumford**
*County Attorney*

**Duties And Responsibilities Of The County Attorney**

Pursuant to **§ 19-23-11 of the Mississippi Code Ann. 2002,** the County Attorney is responsible for the following:

The county prosecuting attorney shall appear and represent the state in all investigations for felony before the various justice court judges in his county. He shall also appear before justice court judges and prosecute all cases against persons charged with offenses therein.

- The county prosecuting attorney shall be the prosecuting attorney for the county court and shall prosecute all state criminal cases therein, and he shall represent the state in criminal cases appealed from the county court to the circuit court.
- The county prosecuting attorney may assist the district attorney in all criminal cases and in all civil cases where the services of the district attorney are required in which the state, his county or any municipality of his county is interested.
- The county prosecuting attorney may present any matter to the grand jury of his county.
- The county prosecuting attorney shall have full responsibility for all misdemeanors, youth court proceedings, and all other cases not specifically granted to the district attorney. Provided, however, that in any municipality having a municipal youth court, the municipal prosecutor shall have responsibility for youth court matters in that court. Where any statute of this state confers a jurisdiction, responsibility, duty, privilege or power upon a county attorney or county prosecuting attorney, either solely, jointly or alternatively with a district attorney, such county prosecuting attorney shall be responsible for the prosecution, handling, appearance, disposition or other duty conferred by such statute. Any such provision shall not be construed to bestow such responsibility, jurisdiction or power upon the district attorney where there is no elected county prosecuting attorney, and any such matter shall be handled pursuant to subsection (8) of this section.
- In any case handled by the county prosecuting attorney pursuant to this section which subsequently results in charges being modified in such a manner that the case would be within the jurisdiction of the district attorney pursuant to Section 25-31-11, the responsibility for prosecution shall be transferred to the district attorney. The county prosecuting attorney shall report to the district attorney the disposition of all affidavits, crimes, occurrences or arrests handled by him wherein any person is charged with a crime for which a conviction may result in imprisonment in the State Penitentiary.

Exhibit H



IN THE CIRCUIT COURT OF MADISON COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

VS. CAUSE NO. 2021-0230JA

CARLOS DOMINIQUE ALLEN DEFENDANT

***PROPOSED WITNESS LIST***

Please be advised that pursuant to Rule 17.2 of the Rules of Criminal Procedure, the Defendant hereby names the following individuals as possible witnesses in the trial set for Monday, January 31, 2022..

1. All witnesses included are from information the State of Mississippi produced in this matter.

2. Jon Cooley, Madison Police Department, 2001 Main Street, Madison, MS 39110. He will testify consistent with his statements in the State's discovery.

3. Matthew Nelson, Madison Police Department, 2001 Main Street, Madison, MS 39110. He will testify consistent with his statements in the State's discovery.

4. Steven V. Tucker, Madison Police Department, 2001 Main Street, Madison, MS 39110. He will testify consistent with his statements in the State's discovery.

5. Nicholas Atkinson, 110 Langford Drive, Brandon, MS 39047. He will testify regarding his knowledge of the investigation.

6. Charles Elliot, 213 Sunset Circle, Madison, MS 39110. He will testify regarding his son's long association with drugs.

Submitted, this the 26th day of January, 2022.

/s/Gerald A. Mumford
Gerald A. Mumford, MSB#101902

Exhibit I



IN THE CIRCUIT COURT OF MADISON COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

VS. CAUSE NO. 2021-0230 JA

CARLOS DOMINIQUE ALLEN DEFENDANT

SUBPOENA FOR TESTIMONY

STATE OF MISSISSIPPI
COUNTY OF MADISON

To any Lawful Officer or Other Persons Authorized to Serve Subpoenas:

WE COMMAND YOU TO SUMMON:

JON COOLEY
(Wherever Found)

To be and personally appear before the Honorable Dewey Authur, Circuit Court Judge, at the Madison County Courthouse in Canton, Mississippi, 39046, on the **28th day of March, 2022 at 9:00 a.m.**, to give evidence in the above-styled and numbered cause on behalf of the Defendant.

Herein you shall not fail under penalty in such case provided and have there and then this writ.

WITNESS MY HAND AND SEAL OF SAID COURT this the 25 day of March, 2022.

Hon. Anita E. Wray
Madison County Circuit Clerk
[signature]

CIRCUIT COURT OF MADISON COUNTY, MS — IN GOD WE TRUST

PREPARED BY:

Gerald A. Mumford, Esq., MSB# 101902
MUMFORD & MUMFORD, PLLC
Post Office Box 683
Jackson, Mississippi 39205
Telephone: 601-398-2347
Facsimile: 888-801-9389

Exhibit O

Mississippi Prosecutors Association 2022-23 Officers

| | |
|---|---|
| **President** | John Weddle, District Attorney, 1st Circuit Court District |
| **President Elect** | Crosby Parker, District Attorney, 2nd Circuit Court District |
| **Immediate Past President** | Takiyah Perkins, Assistant District Attorney, 4th Circuit Court District |
| **Vice-President** | Kaylon McCou, Assistant District Attorney, 4th Circuit Court District |
| **Secretary/Treasurer** | Bryan Buckley, Assistant District Attorney, 12st Circuit Court District |
| **NDAA Representative** | Dewayne Richardson, District Attorney, 4th Circuit Court District |
| **AG Representative** | Mary Helen Wall, Deputy Attorney General, Office of the Attorney General |

Mississippi Prosecutors Association 2022-23 Board of Directors

**District 1:**
1. Stanley Alexander, Assistant District Attorney, 4th Circuit Court District
2. Austin Frye, Assistant District Attorney, 4th Circuit Court District
3. Brandon Ogburn, SAAG, Office of the Attorney General
4. Michael Warren, Assistant District Attorney, 9th Circuit Court District
5. Tommy Whitfield, Assistant District Attorney, 10th Circuit Court District

**District 2:**
1. Kim Harlin, Assistant District Attorney, 15th Circuit Court District
2. Carolyn Lewis, Assistant District Attorney, 19th Circuit Court District
3. Jasmine Magee, Assistant District Attorney, 2nd Circuit Court District
4. Lane Reed, Municipal Prosecutor, Bude and Roxie
5. Dawn Stough, Municipal Prosecutors, Gulfport

**District 3:**
1. Stephanie Brown, Assistant District Attorney, 11th Circuit Court District
2. Brandon Langford, Assistant District Attorney, 5th Circuit Court District
3. Kyle Robbins, Assistant District Attorney, 1st Circuit Court District
4. Rosharwin Williams, Assistant District Attorney, 11th Circuit Court District
5. Reagan Wise, Assistant District Attorney, 1st Circuit Court District

Board Member Appointment/Members At-Large
1. Dee Bates, District Attorney, 14th Circuit Court District
2. Pammie Davidson, Victim's Assistance Coordinator, 3rd Circuit Court District
3. Paul Gault, Assistant District Attorney, 1st Circuit Court District
4. Lauren Harless, Assistant District Attorney, 15th Circuit Court District
5. Lee McDivitt, Investigator, Office of the Attorney General

Exhibit P

United States Attorney's Office Representatives
Shundral Cole, Assistant United States Attorney, Southern District
Jay Hale, Assistant United States Attorney, Northern District
Kimberly Purdie, Assistant United States Attorney, Southern District
Clay Joyner, Acting United States Attorney, Northern District

Past Presidents
Takiyah Perkins, Assistant District Attorney, 4th Circuit Court District
Cherie Wade, Pascagoula Municipal Prosecutor
John Herzog, Assistant District Attorney, 4th Circuit Court District
Joel Smith, Former District Attorney, 2nd Circuit Court District
Hal Kittrell, District Attorney, 15th Circuit Court District
Angel Myers McIlrath, District Attorney, 19th Circuit Court District
Patricia Burchell, Former District Attorney, 12th Circuit Court District
Ricky Smith, District Attorney, 9th Circuit Court District
Tony Lawrence, Former District Attorney, 19th Circuit Court District
Dewayne Richardson, District Attorney, 4th Circuit Court District
Kassie Coleman, District Attorney, 10th Circuit Court District
Arch Bullard, Former Assistant District Attorney, 1st Circuit Court District
Ben Creekmore, District Attorney, 3rd Circuit Court District
Clay Joyner, Assistant United States Attorney, Northern District
Bilbo Mitchell, Former District Attorney, 10th Circuit Court District
Philip Weinberg, Former Assistant District Attorney, 10th Circuit Court District
Claiborne "Buddy" McDonald, Former District Attorney, Retired, 15th Circuit Court District
Bob Payne, Harrison County Prosecutor
Ronnie Harper, Former District Attorney, 6th Circuit Court District
Rusty Fortenberry, Former District Attorney, 13th Circuit Court District

County, Municipal, and Youth Court Prosecutor's Committee
**Chair**-Jay Chain, Lafayette County Prosecutor; Oxford Municipal Prosecutor
Bart Adams, Tippah and Benton County Prosecutor
Wesley Broadhead, Siimpson County Prosecutor
Ikeecia Colenberg, Port Gibson and Brookhaven Municipal Prosecutor
Corey Gerber, Rankin County Prosecutor
Robbie Hayes, Southaven Assistant Municipal Prosecutor
Erica Haymer, Holmes County Prosecutor
Lindsey Jones, Tunica County/County Prosecutor and Youth Court Prosecutor
Thomas Matthews, III, Stone County Prosecutor
Douglas Miller, Purvis Municipal Prosecutor
Molly Miller, Ex-officio, SAAG, Office of the Attorney General
Bridgett Morgan, Jackson Municipal Prosecutor
Kim Nailor, Vicksburg Municipal Prosecutor
Lane Reed, Bude and Roxie Municipal Prosecutor
Fritzie Ross, Washington County Youth Court; Hollandale, Moorhead, and Sunflower Municipal Prosecutor
Aelicia Thomas, Sunflower County Municipal Prosecutor/Bolivar County Prosecutor
Dustin Uselton, Gulfport Assistant Municipal Prosecutor
Cherie Wade, Pascagoula Municipal Prosecutor
Doug Wade, Washington County Youth Court Prosecutor
Robbie Wilson, Grenada County Prosecutor

Exhibit Q

Legislative Committee

**Chairs:**

Kassie Coleman, District Attorney, 10th Circuit Court District
Hal Kittrell, District Attorney, 15th Circuit Court District

**District Co-Chairs:**

Jacque Purnell, Assistant District Attorney, 20th Circuit Court District **(District 1)**
Jason Josef, Assistant District Attorney, 2nd Circuit Court District **(District 2)**

Ian Baker, Assistant District Attorney, 2nd Circuit Court District
Dee Bates, District Attorney, 14th Circuit Court District
Patrick Beasley, Assistant District Attorney, 22nd Circuit Court District
Greg Beard, Farmington Municipal Prosecutor
Olivia Brame, Olive Branch Municipal Prosecutor
Bubba Bramlett, District Attorney, 20th Circuit Court District
Matthew Burrell, Assistant District Attorney, 2nd Circuit Court District
Earl Lin Carter, Jr., District Attorney, 12th Circuit Court District
John Champion, District Attorney, 17th Circuit Court District
Shameca Collins, District Attorney, 6th Circuit Court District
Lindsay Cranford, Special Assistant Attorney General, Attorney General's Office
Ben Creekmore, District Attorney, 3rd Circuit Court District
Christopher Daniel, Assistant District Attorney, 2nd Circuit Court District
John Dowdy, Assistant District Attorney, 15th Circuit Court District
Doug Evans, District Attorney, 5th Circuit Court District
Tamicko Fair, Victim's Assistance Coordinator/District Manager, 4th Circuit Court District
Rusty Fortenberry, Flowood City Prosecutor
Austin Frye, Assistant District Attorney, 4th Circuit Court District
Lauren Harless, Assistant District Attorney, 15th Circuit Court District
Chris Hennis, District Attorney, 13th Circuit Court District
John Herzog, Assistant District Attorney, 4th Circuit Court District
James Holland, DeSoto County Prosecutor
Steven Kilgore, District Attorney, 8th Circuit Court District
Carolyn Lewis, Assistant District Attorney, 19th Circuit Court District
Thomas Matthews, III, Stone County Prosecutor
Kaylon McCou, Assistant District Attorney, 4th Circuit Court District
Lee McDivitt, Investigator, Office of the Attorney General
Angel Myers McIlrath, District Attorney, 19th Circuit Court District
Akillie Malone-Oliver, District Attorney, 21st Circuit Court District
Brenda Mitchell, District Attorney, 11th Circuit Court District
Gerald Mumford, Hinds County Prosecutor
Brandon Ogburn, Special Assistant Attorney General, Office of the Attorney General
Jody Owens, District Attorney, 7th Circuit Court District
W. Crosby Parker, District Attorney, 2nd Circuit Court District
W. Dewayne Richardson, District Attorney, 4th Circuit Court District
Kyle Robbins, Assistant District Attorney, 1st Circuit Court District
Fritzie Ross, Washington County Youth Court; Hollandale, Moorhead, and Sunflower Municipal Prosecutor
Daniella Shorter, District Attorney, 22nd Circuit Court District
Ricky Smith, District Attorney, 9th Circuit Court District
Aelicia Thomas, Sunflower County Municipal Prosecutor/Bolivar County Prosecutor